PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRIAN SCHAFFER, a minor, by his
parents and next friends, Jocelyn
and Martin Schaffer; JOCELYN
SCHAFFER; MARTIN SCHAFFER,

*Plaintiffs-Appellants,*

v.

JERRY WEAST, Superintendent
Montgomery County Public
Schools; BOARD OF EDUCATION OF
MONTGOMERY COUNTY, MARYLAND,

*Defendants-Appellees.*

No. 07-2038

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:99-cv-00015-PJM)

Argued: December 2, 2008

Decided: January 29, 2009

Before WILKINSON, MICHAEL, and TRAXLER,
Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Michael and Judge Traxler joined.

## COUNSEL

**ARGUED:** Michael Eig, MICHAEL J. EIG & ASSO-CIATES, P.C., Chevy Chase, Maryland, for Appellants. Audrey Jane Anderson, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Zvi Greis-mann, MONTGOMERY COUNTY PUBLIC SCHOOLS, Rockville, Maryland; Maree F. Sneed, Jessica L. Ellsworth, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellees.

---

## OPINION

WILKINSON, Circuit Judge:

Brian Schaffer and his parents seek reimbursement for Brian's private school tuition in the eighth grade under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA"). Brian, who graduated from high school in 2003, had Attention Deficit Hyperactivity Disorder and other learning disabilities as a student. Brian's parents rejected an Individualized Education Program ("IEP") that the Montgomery County Public School System ("MCPS") proposed for Brian's eighth-grade year. The Schaffers later accepted an IEP that MCPS proposed for Brian's tenth-grade year. The Schaffers introduced the tenth-grade IEP in district court as "additional evidence," 20 U.S.C. § 1415(i)(2)(C)(ii), that they say demonstrates the inadequacy of the eighth-grade IEP. The district court did not attach weight to the tenth-grade IEP, and the court granted summary judgment for MCPS. Because the district court did not abuse its discretion in declining to penalize MCPS for revising Brian's IEP in the tenth grade, we affirm.

## I.

## A.

Brian Schaffer struggled academically in his studies at Green Acres School, a private institution, through the seventh grade. After officials at Green Acres told Mrs. Schaffer that the school could not properly accommodate Brian's learning disabilities, she contacted MCPS and requested that Brian be placed in a special-education program for his eighth-grade year in 1998-99.

MCPS convened a committee to evaluate Brian's disability and to create an IEP, as the IDEA requires. 20 U.S.C. § 1414.* The committee held two meetings that were attended by MCPS officials, the Schaffers, and the Schaffers' attorney. At those meetings, the committee discussed evaluations by three MCPS officials who had met with Brian, observed him in the classroom, and administered tests to assess his disabilities and needs. The committee also considered the results of two private evaluations obtained by the Schaffers. The private evaluators had concluded that Brian had an auditory processing disorder and that he would do best in small special-education classes.

Based on all of the available information, the committee concluded that Brian had a learning disability and proposed an IEP. The IEP set a number of goals for Brian, the first being "[t]o demonstrate improved auditory perception and comprehension." And the IEP provided that Brian would receive numerous forms of special-education support at Her-

---

*For consistency, all citations are to the current version of the IDEA, enacted in 2004. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647. The proceedings in this case have spanned the 2004 reenactment. While Congress renumbered some of the relevant sections in 2004, the substance of those sections has not changed.

bert Hoover Middle School, a public school near Brian's home.

At Herbert Hoover, Brian would have attended "inclusion model" classrooms for half of his courses (English, Science, and World Studies), totaling 15.3 hours per week. Inclusion model classes are designed to include special-education students within the general-education environment: one teacher oversees the entire class, and a second, special-education teacher focuses solely on a handful of disabled students. Brian also would have received 45 minutes of speech-language therapy per week. And in place of learning a foreign language, he would have been given 45 minutes per day of reading and writing support in a self-contained special-education classroom. Brian would have attended general-education classes for his remaining courses (Art, Math, and Physical Education). In all of his classes, Brian would have received accommodations that included the use of a computer, copies of lecture notes, preferential seating, repetition of directions, and test-taking with extended time and in small groups.

The Schaffers objected to the proposed IEP. They told MCPS that the class sizes at Herbert Hoover were too large to meet Brian's needs. MCPS then offered to place Brian at Robert Frost Middle School, another nearby public school. In addition to all of the services proposed at Herbert Hoover, Brian would have attended a small special-education class for English at Robert Frost, rather than the inclusion model. There also would have been only three other special-education students in Brian's inclusion-model classes at Robert Frost (compared to four or five at Herbert Hoover).

The Schaffers remained dissatisfied. They decided to reject the IEP and to send Brian to the private McLean School of Maryland for his eighth-grade year. The Schaffers had applied to McLean shortly after requesting that MCPS evaluate Brian. Before the Schaffers received MCPS's proposed IEP, Brian was accepted at McLean, and the Schaffers paid the enroll-

ment fee to reserve a spot for Brian at McLean at that time. After receiving the IEP and deciding on McLean, the Schaffers requested a due process hearing to challenge the IEP and to seek reimbursement for Brian's tuition and expenses at the private school in the 1998-99 school year. *See* 20 U.S.C. § 1415(f).

B.

An Administrative Law Judge in Maryland's Office of Administrative Hearings held a three-day hearing to determine whether the eighth-grade IEP would have provided Brian the necessary "free appropriate public education" under the IDEA. 20 U.S.C. § 1400(d)(1)(A). The ALJ heard testimony from Mrs. Schaffer, the Schaffers' two private evaluators, and four MCPS officials who had worked on Brian's IEP. He found that the case was close and that the "assignment of the burden of proof [was] critical" to the outcome. He assigned the burden to the Schaffers. And, applying the standard expressed by the Supreme Court in *Board of Education v. Rowley*, 458 U.S. 176 (1982), the ALJ held that the eighth-grade IEP offered Brian a free appropriate public education because the IEP was "reasonably calculated by MCPS to provide educational benefit and to meet [Brian's] educational needs."

The Schaffers then filed a civil action to challenge the ALJ's decision. *See* 20 U.S.C. § 1415(i)(2)(A). The district court reversed and remanded, holding that the ALJ should have assigned the burden of proof to MCPS. *Brian S. v. Vance*, 86 F. Supp. 2d 538, 545 (D. Md. 2000). A series of appeals and remands followed. *See Weast v. Schaffer*, 377 F.3d 449 (4th Cir. 2004); *Schaffer v. Vance*, 2 Fed. Appx. 232 (4th Cir. 2001); *Weast v. Schaffer*, 240 F. Supp. 2d 396 (D. Md. 2002). In the interim, the ALJ reconsidered the case and —after denying a request by the Schaffers to introduce additional evidence—decided that reversing the burden of proof also reversed the outcome. However, the Supreme Court

eventually held that the Schaffers had the burden of proof in the administrative hearing because they were the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). The Supreme Court then remanded the case for a decision on the merits under the correct burden of proof.

Before the district court could reach the merits, however, the Schaffers moved to introduce "additional evidence" under 20 U.S.C. § 1415(i)(2)(C)(ii). The evidence included letters between the Schaffers and MCPS in 2000, the transcript of an IEP meeting in 2000, and an IEP created in 2000 for Brian's tenth-grade year. The evidence showed that MCPS had offered, and the Schaffers had accepted, a tenth-grade IEP that placed Brian in the Secondary Learning Center at Walter Johnson High School. At Walter Johnson, Brian attended small special-education classes for all of his courses other than physical education and an elective in the arts. The tenth-grade IEP also stated that Brian's academic difficulties were due to "auditory processing and memory." According to the Schaffers, the new language and services in the tenth-grade IEP amounted to a concession by the school system that Brian's eighth-grade IEP was inadequate.

The district court accepted briefing and held a hearing on the Schaffers' additional evidence. The court then admitted the evidence. The court also allowed MCPS to offer additional evidence in rebuttal. MCPS did so, offering two declarations from MCPS officials who stated that Brian's tenth-grade IEP was based on both new assessments of his disability—in particular, Brian scored differently in 2000 on the same IQ test that he took in 1998—and Brian's transition from middle school to high school. MCPS's evidence also showed that Brian had attended more general-education classes over time and that he had graduated from Walter Johnson in 2003 with a 3.4 grade point average in his final term.

Both parties moved for summary judgment. The parties again briefed and orally argued the relevance of the Schaffers'

additional evidence. The district court then granted summary judgment in favor of MCPS in a bench ruling. The court discussed the Schaffers' evidence and the relevant case law, focusing on our analysis of the limitations on "additional evidence" in *Springer v. Fairfax County School Board*, 134 F.3d 659 (4th Cir. 1998). The court then stated that it was "not prepared to conclude that, two years after the fact, the position that [MCPS] may have taken, vis-a-vis the child, would reflect on whether what [it] did two years earlier was appropriate or not." The court therefore decided that it would not attach weight to the Schaffers' additional evidence when assessing the adequacy of the 1998 IEP. Turning to the merits, the court granted deference to the ALJ's original decision made under the correct assignment of the burden of proof, and the court held that the eighth-grade IEP was sufficient under the IDEA.

## II.

### A.

The Schaffers appeal the district court's grant of summary judgment to MCPS. The Schaffers' primary claim is that the district court erred by "refusing to consider" their evidence regarding the tenth-grade IEP proposed by MCPS. *Brief for Appellants* at 2. The Schaffers argue that their evidence was admissible under the language of the IDEA, which provides that the district court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). They also rely on our decision in *Springer v. Fairfax County School Board*, 134 F.3d 659 (4th Cir. 1998), as well as the First Circuit's decision in *Town of Burlington v. Department of Education*, 736 F.2d 773 (1st Cir. 1984), to argue that the tenth-grade IEP constituted admissible "additional evidence." And the Schaffers argue that their evidence should have been decisive in this otherwise close case. They claim that the tenth-grade IEP was an admission by the school system that Brian had a severe auditory processing problem and needed small

classes all along, and that the eighth-grade IEP was therefore inappropriate.

The Schaffers' claims regarding their additional evidence fail for a straightforward reason. The district court did "hear" the Schaffers' evidence of events occurring two years after the ALJ's original hearing and decision. 20 U.S.C. § 1415(i)(2)(C)(ii). But the court properly exercised its discretion to discount that evidence because the evidence promoted a hindsight-based review that would have conflicted with the structure and purpose of the IDEA.

In fact, the district court devoted substantial attention to the Schaffers' additional evidence. When the Schaffers offered their evidence, the court accepted briefing and held a hearing regarding the evidence and its relevance. The court then admitted the evidence. The court also admitted rebuttal evidence from MCPS. The court then received more briefing on the evidence in the parties' summary judgment motions. And at the summary judgment hearing, the court heard even more argument from the parties regarding the proper weight to be given to the Schaffers' evidence.

In the end, however, the Schaffers failed to convince the district court that their additional evidence should determine the merits of the case. The district court's treatment of the evidence presents a question not of admissibility, but of weight. Indeed, it is difficult to discern what more the district court could have done with the Schaffers' evidence—other than weigh it differently. The Schaffers are therefore arguing beside the point when they insist that their evidence was admissible under the IDEA's broad language, as well as under *Springer* and *Burlington*. The district judge did admit the Schaffers' post-hearing evidence, but he declined to use that evidence to Monday-morning quarterback the school system. And in doing that, the district court acted well within its discretion.

Our decision in *Springer*, consistent with the law in other circuits, recognized that district courts have the discretion to tailor their proceedings and to limit the introduction of "additional evidence" under the IDEA. *See* 134 F.3d at 666-67 (citing cases). That authority was necessary, we held, to protect the role of the administrative hearing as the primary forum in which to resolve disputes regarding IEPs—to avoid turning the administrative hearing into a "mere dress rehearsal" followed by an "unrestricted trial *de novo*" in the district court. *Id.* at 667 (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 997 (1st Cir. 1990)). Indeed, state administrative hearings under the IDEA are entitled to "due weight." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). But if parties could always introduce additional evidence in the district court "to patch up holes in their administrative case," *Springer*, 134 F.3d at 667, administrative proceedings would no longer receive the weight that they are due.

The Schaffers' evidence demonstrates this problem. Their evidence is not identical to that in *Springer*: the Schaffers' evidence arose only after the initial administrative hearing and thus could not have been presented there. But this type of post-hearing evidence still risks diminishing the role of administrative proceedings under the IDEA. In the Schaffers' view, the district court in this case should have overturned the ALJ's original decision based on evidence that did not even exist at the time that the school district's decision was made.

The district court did not abuse its discretion in treating such evidence cautiously. It is inevitable that additional information will become available after an administrative hearing —be it changes in the child's academic performance, improvements in diagnostic techniques, newly available education programs, and so on. Indeed, the IDEA requires school districts to reevaluate children's disabilities periodically, 20 U.S.C. § 1414(a)(2), and to review and revise IEPs on an annual basis, *id.* § 1414(d)(4)(A). Thus, not only does the IDEA recognize that children change over time, *CM v. Bd. of*

*Educ.*, 241 F.3d 374, 380 (4th Cir. 2001), but the statute affirmatively requires school districts to create and analyze new information—which would become fodder for endless litigation if district courts were compelled to give significant weight to new evidence whenever it arose. *See, e.g.*, *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006) (holding that there was no "solid justification" for introducing evidence that arose after the administrative hearing because a "vast and detailed administrative record" already existed and because courts in IDEA cases "normally determine these issues based solely on the administrative record").

As we recognized in *Springer*, prolonged litigation and a lack of finality disserve the IDEA's purpose of including disabled students in the public education system as quickly as possible. *See* 20 U.S.C. § 1400(d); *Springer*, 134 F.3d at 667; *see also CM*, 241 F.3d at 380. And perpetual litigation due to the introduction of new evidence also would force school districts to divert scarce resources to the already substantial costs of IDEA litigation, a concern recognized by the Supreme Court in this very case. *See Schaffer v. Weast*, 546 U.S. 49, 58-59 (2005). As the Court observed, the IDEA does not itself decide whether "marginal dollars should be allocated to litigation and administrative expenditures or to educational services," but "a great deal is already spent" by school districts on administration and litigation under the IDEA. *Id.* The district judge obviously did not err in taking the Supreme Court's concern into account.

Assigning dispositive weight to evidence that arises only after the administrative hearing presents one additional and important danger: turning district court review of IEPs into a second-guessing game that will only harm the interests of the disabled children the statute was intended to serve. Judicial review of IEPs under the IDEA is meant to be largely prospective and to focus on a child's needs looking forward; courts thus ask whether, at the time an IEP was created, it was "reasonably calculated to enable the child to receive educa-

tional benefits." *Rowley*, 458 U.S. at 207; *Burlington*, 736 F.2d at 788; *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). But this prospective review would be undercut if significant weight were always given to evidence that arose only after an IEP were created. *Cf. Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (affirming the district court's conclusion that evidence of a later IEP was "irrelevant to the issue of the appropriateness of" prior IEPs). Judicial review would simply not be fair to school districts, whose decisions would be judged in hindsight "based on later assessments of a student's needs at [a] later point in time." *Brief for Appellees* at 28; *see also Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 762 (3d Cir. 1995). And more importantly, if services added to a later IEP were always used to cast doubt on an earlier one, school districts would develop a strong disincentive against updating their IEPs based on new information. This scenario is the exact opposite of what Congress intended when it provided for regular review and revision of IEPs, *see* 20 U.S.C. § 1414(d)(4)(A), and it would do little to help the interests of disabled children.

## B.

The Schaffers' evidence illustrates well the unfortunate incentives created by excessive hindsight-based judging of IEPs. The Schaffers argue that Brian's tenth-grade IEP demonstrates that Brian had a severe auditory processing problem and needed small classes all along, and they therefore argue that the eighth-grade IEP was a mistake at the time it was proposed. As a factual matter, the Schaffers' argument is untenable. Brian's own academic history makes clear that his profile did not remain static over time. MCPS submitted a declaration from Janan Slough, the Assistant Principal at Walter Johnson, who stated that "[a] student's needs can change from school year to school year and even during a school year." And she stated that Brian exemplified these sorts of changes because he "pursued an increasingly mainstreamed program at Walter Johnson, while continuing to achieve academic success."

It is also clear that the tenth-grade IEP was based on pre-cisely these sorts of changes in Brian's profile. The Schaffers' evidence—particularly the transcript of the IEP meeting in 2000—shows that the school system's IEP team carefully considered both new assessments of Brian and the Schaffers' concerns regarding Brian's recent academic performance, as well as Brian's needs in high school. The IEP team then chose to place Brian at Walter Johnson based on Brian's changed circumstances. Another declaration submitted by MCPS sup-ports the same conclusion. David Cross, an MCPS special educator, stated that the IEP team took "into consideration the special education services available and appropriate for a high school setting," as opposed to the middle school setting of the 1998 IEP. Cross also stated that Brian performed differently in 2000 on the same IQ test that had been administered to him in 1998—Brian showed an increased discrepancy in 2000 between his verbal and performance IQ scores—and that this new assessment and others "were relevant to and the reason for the IEP Team's suggestion that Brian be placed at the Walter Johnson Learning Center."

Thus, the evidence demonstrates that MCPS took careful measures in 2000 to reassess Brian's disability and to offer him the special-education services that were appropriate for him at the time. In particular, the tenth-grade IEP team recog-nized that Brian had continued to struggle with reading and that his grades at the private McLean School in eighth and ninth grades had worsened over time; that information influ-enced the special-education offerings that Brian was accorded at Walter Johnson. To interpret the tenth-grade IEP as an admission of fault as to the eighth-grade IEP would discour-age MCPS and other school systems from reassessing and updating IEPs out of fear that any addition to the IEP would be seen as a concession of liability for an earlier one. And it would thereby prevent students like Brian from receiving appropriate services as their profiles changed. District courts are free to exercise their discretion in a manner that avoids such results.

As we have made clear, the dangers of post-hearing evidence are significant. But we deal here with matters of degree, not absolutes. We recognize that some evidence arising after an administrative hearing might do minimal harm to the role of the ALJ or would not serve to prolong litigation. And judicial review under the IDEA does look backward to some extent, so evidence arising after an administrative hearing might bear on the suitability of an earlier IEP without turning the process into an overly retrospective one. We have held that where an IEP is accepted, evidence of educational progress under that IEP is useful in deciding whether the IEP was appropriate. *See MM v. Sch. Dist.*, 303 F.3d 523, 532 (4th Cir. 2002). Because they can view the evidence first-hand, district courts are in the best position to make these judgment calls and to grant proper weight to additional evidence without contradicting the structure and purposes of the IDEA.

Based on all of these considerations, the district court plainly exercised appropriate discretion in deciding that the Schaffers' post-hearing evidence should not determine the appropriateness of the eighth-grade IEP. As its bench ruling makes clear, the district court examined the Schaffers' evidence and understood their argument that the tenth-grade IEP demonstrated that the eighth-grade IEP was inappropriate. But the district court then took into account the problems with relying on evidence like the Schaffers'. The court correctly recognized that review of IEPs must be largely prospective, whereas the Schaffers' evidence encouraged a hindsight-based review of the eighth-grade IEP. And the district court concluded that the Schaffers' evidence on what the school system did in 2000 should not "reflect on whether what [MCPS] did two years earlier was appropriate or not." This treatment of the Schaffers' evidence respected Brian's changing needs and was well within the district court's discretion. We thus have no reason to question the district court's decision to grant the Schaffers' evidence little weight.

III.

We turn now to the merits of the case: whether the eighth-grade IEP satisfied the IDEA by offering Brian a free appropriate public education. We conclude that it did.

The ALJ found that the eighth-grade IEP was adequate when he assigned the burden of proof to the Schaffers in the original due process hearing. As the Supreme Court later held, that assignment of the burden of proof was correct. *Schaffer*, 546 U.S. at 62. The ALJ's findings in the first hearing were therefore "regularly made" and entitled to due weight, or a "presumption of correctness." *County Sch. Bd. v. Z.P.*, 399 F.3d 298, 305 (4th Cir. 2005) (citing *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 104-05 (4th Cir. 1991)); *see also MM*, 303 F.3d at 530-31. The district court properly deferred to these findings in granting summary judgment to MCPS. And we see no reason to overturn the findings of the ALJ or the district court's deference to them.

Indeed, numerous features of the eighth-grade IEP supported the ALJ's conclusion that the IEP was "reasonably calculated by MCPS to provide educational benefit and to meet [Brian's] educational needs" and thus offered Brian a free appropriate public education. *See Rowley*, 458 U.S. at 206-07. The IEP recognized Brian's auditory processing problem when it listed as the first of a number of goals: "[t]o demonstrate improved auditory perception and comprehension." The original IEP for Herbert Hoover Middle School proposed that Brian would receive 15.3 hours per week of inclusion model courses, 45 minutes per week of speech-language therapy, and 45 minutes per day of reading and writing support in a special-education classroom. Brian also would have received additional accommodations that included the use of a computer, copies of lecture notes, preferential seating, repetition of directions, and test-taking with extended time and in small groups. And when the Schaffers questioned Brian's placement at Herbert Hoover due to the sizes of the classes, MCPS tried

to accommodate the Schaffers with a placement at Robert Frost Middle School, where Brian would have received even more special-education support.

Four MCPS officials testified before the ALJ that these features of the eighth-grade IEP would have appropriately addressed Brian's disability. The ALJ deemed these officials to be "well qualified witnesses," and he deferred to their professional judgment. We owe them deference as well. *See MM*, 303 F.3d at 531, 533.

The ALJ also presented valid reasons for assigning comparatively less weight to the testimony of the Schaffers' experts, who claimed that the eighth-grade IEP would not have addressed Brian's disability. For example, neither of the Schaffers' experts had personally observed the inclusion model classes at Herbert Hoover or Robert Frost, so the ALJ discounted the experts' testimony that the classes at those schools would not have been appropriate for Brian. The ALJ also questioned the testimony of one of the experts, Dr. Ruth Spodak, because she had met with Brian for only ten minutes. And while the Schaffers have argued throughout this litigation that their other expert, Dr. Carol Kamara, was well-qualified to diagnose Brian with a severe auditory processing problem because she was an audiologist, the ALJ observed that MCPS had reviewed Dr. Kamara's evaluation, had conducted its own assessment of Brian's auditory processing problem, and had reached a different conclusion. The ALJ also attempted to reconcile Dr. Kamara's testimony with that of the MCPS officials when he found that Brian had "moderate difficulty with auditory processing skills." And the ALJ then concluded that the eighth-grade IEP appropriately addressed Brian's existing auditory processing problem. We presume these findings of the ALJ to be correct, and we see no reason to overturn them based on the evidence available at the time.

In the end, the ALJ recognized the primary flaw in the Schaffers' arguments and the testimony of their experts: the

Schaffers sought more than the IDEA requires. As the ALJ observed, the Supreme Court has held that an IEP need not provide the best possible education; instead, it need only provide "some educational benefit," or a "basic floor of opportunity." *Rowley*, 458 U.S. at 200-01; *see also MM*, 303 F.3d at 526. The ALJ realized, however, that the Schaffers and their experts were seeking small classes for Brian in order to maximize his potential. For example, the ALJ observed that Dr. Spodak's written evaluation of Brian prior to the hearing stated that Brian would "do best" in small classes, not that they were necessary to provide him an educational benefit. Although the ALJ recognized that Brian might have received a greater educational benefit at McLean than from the IEP, the Schaffers failed to persuade him that the eighth-grade IEP was not reasonably calculated to provide some educational benefit to Brian. Granting due weight to the proceedings before the ALJ, we agree that the eighth-grade IEP would have provided Brian a free appropriate public education. The Schaffers' claim for reimbursement therefore fails, and the judgment is affirmed.

*AFFIRMED*