**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

E. M., a minor, by and through
his parents, E.M. and E.M.,
                    *Plaintiff-Appellant,*

        v.

PAJARO VALLEY UNIFIED SCHOOL
DISTRICT OFFICE OF ADMINISTRATIVE
HEARINGS,

                    *Defendant-Appellee.*

No. 09-17084

D.C. No.
5:06-cv-04694-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
November 5, 2010—San Francisco, California

Filed July 14, 2011

Before: John T. Noonan, Richard A. Paez, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge Bea

## COUNSEL

Mandy G. Leigh, Jay T. Jambeck (of counsel), Sarah J. Fairchild, Leigh Law Group, San Francisco, California, for plaintiff-appellant E.M.

Laurie E. Reynolds, Kimberly A. Smith, Fagen, Friedman & Fulfrost, Oakland, California, for defendant-appellee Pajaro Valley Unified School District.

## OPINION

NOONAN, Circuit Judge:

E.M. is a bilingual student in Pajaro Valley Unified School District ("PVUSD"), California. He has performed poorly in school, although by most measures, he is of average to above-average intellectual ability. E.M.'s parents brought this action to challenge PVUSD's determination that E.M. did not qualify for special education under the Individuals with Disabilities Education Act ("IDEA"). The Special Education Division of the California Office of Administrative Hearings ("OAH") upheld PVUSD's assessment. The district court, in turn, upheld the OAH's decision.

This appeal comes to us after careful consideration by an able district judge. We disagree with his assessment only to the extent that we find one claim not addressed and one report not measured for its relevance. We affirm the judgment of the district court in part, reverse in part, and remand for further proceedings.

## FACTS

At all relevant times, E.M. was a student in PVUSD. In the third and fourth grades, he struggled in school. His teachers identified attention and homework completion as problem areas. They used interventions designed to help him succeed in a regular educational program. They had limited success. E.M. was designated as "at risk for retention." However, his teachers did not perceive him as a candidate for special education.

The summer before E.M. entered fifth grade, his parents brought him to a psychologist, Roslyn Wright, to have him evaluated for a learning disability. Dr. Wright assessed E.M. using a test of intellectual ability, the Wechsler Intelligence Scale for Children, Third Edition ("WISC-III"), and a battery of achievement tests, the Woodcock-Johnson Tests of Achievement-III ("WJ-III"). Based on the test results, Dr. Wright diagnosed E.M. with a learning disability.

E.M.'s parents then requested PVUSD to assess their son for eligibility for special education and related services under IDEA. PVUSD's psychologist administered to E.M. the Kaufman Assessment Battery for Children ("K-ABC"), a comprehensive intelligence test, and the WJ-III achievement tests. Based on this assessment, PVUSD determined that E.M. was not eligible for special education.

At the request of E.M.'s parents, PVUSD reassessed E.M. in May of his fifth-grade year and reached essentially the same result as it did in its first assessment. PVUSD performed

a third assessment in June, resulting in recommendations for additional interventions in the general education classroom. At the end of fifth grade, PVUSD again designated E.M. as at risk for retention.

In November 2005, in the first half of E.M.'s sixth-grade year, E.M.'s parents obtained an auditory evaluation by Dr. Ruth Kaspar. She concluded that E.M. had an auditory processing disorder.

## PROCEEDINGS

E.M.'s parents disagreed with PVUSD's assessments and, on December 5, 2005, E.M. filed a complaint with the Special Education Division of the OAH. The OAH held a six-day due process hearing and issued a decision in favor of PVUSD on all issues. E.M. appealed the decision to the district court, where the parties filed cross-motions for summary judgment.

In the district court, E.M. moved to supplement the record with evidence obtained after the conclusion of the OAH hearing. This evidence included a report by Cheryl Jacques, a clinical psychologist, who reviewed E.M.'s records and conducted a battery of tests. Dr. Jacques tested E.M.'s intelligence using the WISC-IV, an updated version of the WISC-III test that Dr. Wright used. Based on her assessment and review of the records relating to E.M., Dr. Jacques concluded that E.M. had a "specific learning disability" as defined under IDEA. *See* 20 U.S.C. § 1401(30). She also reviewed the data from prior assessments and concluded that it was "puzzling" that PVUSD did not find that E.M. qualified for special education in 2004. The district court denied E.M.'s request to supplement the record with Dr. Jacques's report.

The district court initially denied PVUSD's motion for summary judgment and remanded E.M.'s case to the OAH for further written analysis as to some of the prior conclusions of the administrative law judge ("ALJ"). In the meantime,

PVUSD re-assessed E.M. and, on February 22, 2008, found him eligible for special education as of that date. PVUSD did not admit that it had previously failed to locate, evaluate, and identify E.M. as a student with a disability.

The OAH returned E.M.'s case to the district court, where E.M. argued that he was entitled to compensatory educational services, among other forms of relief, based on PVUSD's failure to meet its obligations to him under IDEA prior to its February 22, 2008 reassessment. The district court found that the ALJ's amended opinion provided a sufficient basis for deciding the parties' cross-motions for summary judgment. It granted PVUSD's motion.

This appeal followed.

## ANALYSIS

We have jurisdiction to review the district court's grant of summary judgment under 28 U.S.C. § 1291. We review de novo an award of summary judgment. *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1494 (9th Cir. 1994). Evidentiary rulings are reviewed for abuse of discretion. *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009).

E.M. claims that the district court erred in concluding that PVUSD met its affirmative obligation to locate, evaluate, and identify him as a student with a disability (its "child find" obligation). *See* 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111(a)(1)(ii); Cal. Educ. Code §§ 56300, 56301. In particular, E.M. argues that PVUSD did not properly evaluate him and identify him as a student eligible for special education and related services based on his specific learning disability and on his "other health impairments" of Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder ("ADD/ADHD") and auditory processing disorder. *See* 20 U.S.C. § 1401(3)(A)(i); 20 U.S.C. § 1401(30). E.M. claims

entitlement to additional educational services to compensate him for PVUSD's failure to meet its obligations to him under IDEA. *See Puyallup*, 31 F.3d at 1496.

## I.

We first address E.M.'s eligibility for special education as a child with a specific learning disability. Under California law in effect during the relevant period, a child is found to have a specific learning disability when it is determined that (1) a "severe discrepancy" exists between the child's intellectual ability and achievement in one or more of seven designated academic areas; (2) "[t]he discrepancy is due to a disorder in one or more of the basic psychological processes and is not the result of environmental, cultural, or economic disadvantages"; and (3) "[t]he discrepancy cannot be corrected through other regular or categorical services offered within the regular instructional program." Cal. Educ. Code § 56337 (2005). The parties dispute whether E.M. met the first and second criteria.

E.M. argues that the district court improperly concluded that he failed to establish that he suffered from a "disorder in a basic psychological process." We agree. The only person who formally assessed E.M. for an auditory processing disorder was Dr. Ruth Kaspar. Dr. Kaspar, an audiologist, diagnosed E.M. with an auditory processing disorder. The school district hired Dr. Jody Winzelberg, also an audiologist, as an expert witness. Based on a review of Dr. Kaspar's report, Dr. Winzelberg testified that she would characterize E.M.'s test results as showing "some weakness in the auditory system," and that she could not rule out an auditory processing disorder diagnosis.

E.M. also argues that the district court erred in concluding that he failed to show that there was a "severe discrepancy" between his intellectual ability and achievement scores. In determining whether a severe discrepancy existed, PVUSD

used E.M.'s performance score of 104 on the WISC-III test administered by Dr. Wright rather than E.M's mental processing composite score of 111 on the K-ABC test that PVUSD itself administered. PVUSD does not dispute that had it used the K-ABC score, it would have found a severe discrepancy. Instead, PVUSD argues that it made a reasonable determination that E.M. did not show a severe discrepancy based on all available material on E.M. E.M. contends that PVUSD impermissibly considered the fact that he is bilingual and "cherry picked" among his test scores to reach a predetermined result.

**[1]** This court has held that school districts have discretion in selecting the diagnostic tests they use to determine special education eligibility. *See Ford v. Long Beach Unified Sch. Dist.*, 291 F.3d 1086, 1088-89 (9th Cir. 2002) (holding that a school district need not use any traditional IQ test to assess for specific learning disability). E.M.'s case presents a related, but different, question: does IDEA permit a school district to exclude the valid results of a test the district itself selected and administered? This question touches on a fundamental tension in special education law — that between ensuring that all disabled children have access to educational opportunity and ensuring that non-disabled children are not improperly identified as disabled. This tension is particularly salient for minority students, who historically have been over-identified as disabled and disproportionally placed in segregated educational settings, due in part to biased IQ tests. *See*, *e.g.*, *Larry P. by Lucille P. v. Riles*, 793 F.2d 969 (9th Cir. 1984); *Diana v. Cal. Bd. of Educ.*, No. C-70-37 RFP (N.D. Cal. 1970, 1973) (resolved through a stipulated settlement). IDEA mandates that states implement safeguards aimed at ensuring that testing procedures are not racially or culturally discriminatory, and that "no single procedure shall be the sole criterion for determining an appropriate educational program for a child." 20 U.S.C. § 1412(a)(6)(B). In line with this requirement, California Code of Regulations, title 5, § 3030(j) mandates that school districts consider "all relevant material which is available on the pupil" and not use any "single score or product of

scores, test or procedure" in determining eligibility based on a specific learning disability. Where a comparison of IQ scores and achievement scores yields an ambiguous result, the application of a blanket rule barring a school district from considering other factors in determining whether a child has a specific learning disability would upset the balance IDEA attempts to achieve. Accordingly, we hold that a school district, considering all relevant material available on a pupil, must make a reasonable choice between valid but conflicting test results in determining whether a "severe discrepancy" exists. *See* Cal. Code Regs., tit. 5, § 3030(j).

**[2]** Before determining whether PVUSD's choice among test scores was reasonable, it is necessary to address the parties' dispute over whether the district court properly excluded the assessment of E.M. conducted by Dr. Jacques. IDEA mandates that, on review of an administrative decision, the district court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). But not all evidence is "additional evidence." In *Ojai Unified Sch. Dist. v. Jackson*, we held that a district court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing, nor should it admit evidence that changes " 'the character of the hearing from one of review to a trial *de novo*.' " 4 F.3d 1467, 1473 (9th Cir. 1993), *cert. denied*, 513 U.S. 825 (1994) (quoting *Town of Burlington v. Dep't of Educ., 736 F.2d 773, 791 (1st Cir. 1984), aff'd sub nom. Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985)). Adopting the First Circuit's rule in *Town of Burlington*, we held that "additional evidence" includes, inter alia, "evidence concerning relevant events occurring subsequent to the administrative hearing." *Ojai*, 4 F.3d at 1473. Applying this rule, we determined that the district court properly admitted evidence related to an alternative educational placement for a disabled child. *Id.* The placement first became available after the child's administrative hearing. *Id.* Similarly, in *Adams v. Oregon*, we observed that after-acquired evidence "may shed light" on the objective reasonableness of a school district's

actions at the time the school district rendered its decision. 195 F.3d 1141, 1149 (9th Cir. 1999). In summary, under our precedent, evidence that is non-cumulative, relevant, and otherwise admissible constitutes "additional evidence" that the district court "shall" consider pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii).

IDEA's requirement that courts consider additional evidence is grounded in the somewhat unusual nature of judicial review under the Act. In *Ojai*, we observed that "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." 4 F.3d at 1471. Under IDEA, "the federal court has a continuing obligation to ensure that the state standards themselves and as applied are not below the federal minimums . . . . [which] persists despite any state administrative rulings on federal law or state recodifications of federal law." *Town of Burlington*, 736 F.2d at 792. The requirement that federal courts consider additional evidence when evaluating state administrative rulings implements the intent that federal courts enforce the minimum federal standards IDEA sets out.

It is argued that our reading of 20 U.S.C. § 1415(i)(2)(C)(ii) conflicts with the Fourth Circuit's holding in *Schaffer v. Weast*, 554 F.3d 470, 476 (4th Cir. 2009). But in *Schaffer*, the contention that the district court violated IDEA's mandate that it hear additional evidence failed for the "straightforward reason" that the district court in fact had admitted the evidence. *Id*. at 475. It simply concluded that the evidence should not "determine the merits of the case." *Id*. Here, the district court did not admit Dr. Jacques's report and did not consider it in deciding the merits of E.M.'s case.

It is also argued that our opinion is inconsistent with the Eighth Circuit's holding in *West Platte R-II School District v. Wilson*, 439 F.3d 782 (8th Cir. 2006). In *West Platte*, the court

upheld the district court's exclusion of evidence of a child's progress subsequent to the administrative hearing because the proponent of the evidence — the school district — failed to "provide a solid justification for supplementing the record." *Id.* at 785. The court in *West Platte* did not cite 20 U.S.C. § 1415(i)(2)(C)(ii), and the court appears not to have accounted for the unusual nature of judicial review in IDEA cases. *See Ojai*, 4 F.3d at 1471. Moreover, *West Platte*'s unelaborated requirement that the school district offer a "solid justification" for the admission of after-acquired evidence does not appear to conflict with our reading of 20 U.S.C. § 1415(i)(2)(C)(ii). The determinations of a state agency are entitled to greater deference where, as in *West Platte*, the agency finds that one of its school systems has not complied with the state's implementation of the IDEA. *See Town of Burlington*, 736 F.2d at 792.

Our reading of 20 U.S.C. § 1415(i)(2)(C)(ii) finds support in *Susan N. v. Wilson School District*, 70 F.3d 751, 760 (3d Cir. 1995), in which the Third Circuit ruled that a district court "must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved." The court concluded that the district court lacked discretion to summarily exclude evidence that was not available at the time of the administrative hearing and was relevant to the district court's assessment of the reasonableness of the school district's decision at the time the decision was made. *Id.* at 758.

Similarly, in *Town of Burlington*, the First Circuit declined to adopt a rule disallowing testimony by "all who did, or could have, testified [at] the administrative hearing." 736 F.2d at 790. The court commented on the particular usefulness of expert testimony to the district court in "illuminating the nature of the controversy" and "bringing the court up to date on the child's progress from the time of the hearing to the trial." *Id.* at 791.

**[3]** We hold that the district court applied an incorrect standard for admission of after-acquired evidence in excluding Dr. Jacques's report. The district court excluded Dr. Jacques's report as not "necessary to evaluate the ALJ's determination." The proper inquiry was whether the report was relevant, non-cumulative, and otherwise admissible.

**[4]** Dr. Jacques's report shows that E.M. had a legally significant discrepancy between ability and achievement in 2007. This showing may make it more likely that a legally significant discrepancy was present in 2004. Moreover, Dr. Jacques observed that PVUSD would have found that a severe discrepancy existed in 2004 had it used either the K-ABC nonverbal score of 113 or the K-ABC mental processing composite score of 111. Her report concluded that "it is puzzling that the district did not find [E.M.] eligible for special education in 2004."

It is true that we have said that "actions of the school systems . . . cannot be judged exclusively in hindsight." *Adams*, 195 F.3d at 1149-50 (quoting *Fuhrmann v. E. Hannover Bd. of Educ.*, 993 F.2d 1031, 1041 (3d Cir. 1993)). But that exclusive use of hindsight is forbidden does not preclude consideration of subsequent events. *Id*. The clear implication of permitting some hindsight is that additional data, discovered late in the evaluation process, may provide significant insight into the child's condition, and the reasonableness of the school district's action, at the earlier date.

**[5]** It might be thought that the more exacting test, developed in 2007, is not relevant to 2004: the 2007 test could not have been used in 2004. The school district cannot be faulted for failing to use a test that was not available in 2004. The intent of 20 U.S.C. § 1415(i)(2)(C)(ii), however, is that the school district's 2004 actions be reviewed with the help available in 2007.

On remand, the district court should consider whether Dr. Jacques's report is relevant to the determination whether

PVUSD met its obligations to E.M. under the IDEA and is otherwise admissible.

E.M. also argues that the district court should have considered PVUSD's 2008 assessment finding him eligible for special education and related services on the basis of his specific learning disability. IDEA provides that the district court "shall receive the records of the administrative proceedings." 20 U.S.C. § 1415(i)(2)(C)(i). E.M. asserts that the 2008 assessment was submitted to the OAH after the district court remanded his case. PVUSD does not dispute this assertion. It is unclear to us why the assessment does not appear in the district court's record. The district court should consider the assessment on remand. *See M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 641 n.8 (9th Cir. 2005).

## II.

**[6]** E.M. asserts that the district court should have considered whether his auditory processing disorder diagnosis qualified him for special education as a child with an "other health impairment[ ]." *See* 20 U.S.C. § 1401(3)(A)(i). It is argued that E.M. failed to raise this claim. The argument overlooks the record. In E.M.'s complaint to the OAH, he requested "[t]o be found eligible for special education and related services under the IDEA . . . as a child having an other health impairment due to his auditory processing deficits." E.M.'s complaint to the district court alleged that "testimonial and documentary evidence established a strong basis for suspecting that E.M. can qualify for special education under other [than specific learning disability] eligibility categories." This evidence included Dr. Kaspar's evaluation diagnosing E.M. with an auditory processing disorder. The OAH apparently ignored E.M.'s other health impairment claim and the district court did not consider it. In a brief E.M. submitted to the district court after the OAH amended its first decision, E.M. asserted that the OAH erred in concluding that PVUSD properly assessed him in "the suspected area of disability of audi-

tory processing." In his opening brief to this court, E.M. argued that he qualified for special education based on his auditory processing disorder. In short, E.M. had asserted his auditory processing disorder claim no less than four times — to the OAH; twice to the district court; and in his opening brief to us. Both parties addressed the issue at oral argument. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). E.M. did not waive his other health impairment claim.

**[7]** The regulations define "other health impairment" as "having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment." 34 C.F.R. § 300.8(c)(9). The impairment must be attributable to "chronic or acute health problems" and must have an adverse effect on the child's educational performance. *Id*. The regulations contain a non-exhaustive list of chronic and acute health problems, which does not include auditory processing disorder. *See id.* On remand, the district court should address whether an auditory processing disorder may qualify as an other health impairment, and if so whether PVUSD met its obligation to assess E.M. and identify him as a child with an other health impairment.

III.

**[8]** E.M. contends that the district court erred in holding that the ALJ properly struck E.M.'s allegations that PVUSD failed to assess him for ADD/ADHD. The party requesting a due process hearing before the ALJ in an IDEA case may not raise issues at the hearing that were not included in its complaint unless the other party consents. Cal. Educ. Code § 56502(i) (2005). The district court correctly concluded that E.M. did not include an ADD/ADHD claim in his complaint to the ALJ. Accordingly, the district court did not err in upholding the ALJ's decision to strike E.M.'s ADD/ADHD allegations.

## CONCLUSION

For the reasons stated, the district court's decision is AFFIRMED with respect to E.M.'s claim that he qualified for special education and related services as a child with ADD/ADHD and REVERSED and REMANDED for a determination whether, during all relevant times, PVUSD met its affirmative obligation to locate, evaluate, and identify E.M. as a child with an other health impairment or a specific learning disability related to his auditory processing disorder.

Each party shall bear its own costs on appeal.

---

BEA, Circuit Judge, dissenting:

I respectfully dissent. The district court did not err when it failed to admit the 2007 Jacques report, which could not possibly have had any relevance to the school district's 2004 evaluation of E.M. Nor did the district court err by "failing" to consider a claim with which neither we nor the district court were presented: that E.M.'s auditory processing disorder qualified him for special education under the "other health impairment" provision of the IDEA. *See* 20 U.S.C. § 1401(3)(A). In my view, the majority reverses the district court for its failure to admit—or "adequately" to consider— evidence and claims which were either irrelevant, waived, or improperly presented.

The majority reverses and remands based on two perceived "failings" by the district court. First, the majority faults the district court's discretionary determination that a 2007 report by Cheryl Jacques did not qualify as relevant "additional evidence." 20 U.S.C. § 1415(e)(2). Second, the majority holds that the district court was required to consider (apparently *sua sponte*) E.M.'s contention—raised for the first time at oral argument before *this* court—that his auditory processing dis-

order qualified him for special education as a child with an "other health impairment." 20 U.S.C. § 1401(3)(A).

As to the Jacques report, the relevant statutory requirement provides that the district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and . . . shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Despite the seemingly mandatory language of the statute, "the district court has discretion to determine what qualifies as 'additional evidence.' " *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993). In the district court's discretion, additional evidence "*might* include . . . evidence concerning *relevant* events occurring subsequent to the administrative hearing." *Id.* at 1473 (emphasis added). However, "actions of the school systems . . . cannot be judged exclusively in hindsight," and a school district's actions must be judged as "a snapshot, not a retrospective." *Adams by & Through Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1993).

In light of these standards, the district court correctly determined that the Jacques report was not "relevant" additional evidence. Throughout this litigation, E.M. has contended that the school district erred *in October 2004* when it determined E.M. was ineligible for special education. E.M. seeks monetary compensation for that claimed *2004* error.[1] But Dr.

---

[1]E.M. contends that this court may award monetary "remedies" under the IDEA. However,"money damages are not available under the IDEA," *Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1049 (9th Cir. 2002), and E.M. does not seek reimbursement of private schooling costs under 20 U.S.C. § 1412(a)(10)(C), because E.M. never *enrolled* at a private institution. Thus, the only monetary remedies E.M. can obtain are attorneys' fees and costs, which may only be awarded to a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i)(I). E.M. can prevail only if the school district erred in its 2004 evaluation. As explained above, I do not think the district court erred in ruling in favor of the school district; E.M. did not prevail. He should take nothing.

Jacques's report relied upon a test performed in 2007, and one of the key assessment tools she used in performing the 2007 evaluation—the Woodcock-Johnson III 2005 Normative Update—had not even been *published* in 2004. E.M.'s 2007 scores on a test which the school district could not possibly have administered in 2004 is irrelevant to the question whether the school district erred in its 2004 determination.

The majority nevertheless contends that Dr. Jacques's report—which showed a "legally significant discrepancy between ability and achievement in 2007"—is *potentially* relevant because it "may make it more likely that a legally significant discrepancy was present in 2004." As an initial matter, the Jacques report itself undermines that conclusion. Dr. Jacques stated that discrepancies between her evaluation of E.M. and his previous assessments were likely attributable to the fact that the "updated tests are harder" and the "increased academic load in *middle school* . . . contributed to a *widening* gap in his intelligence and his achievement levels." (emphasis added). In 2004, E.M. was not yet in middle school. He was in the fourth grade. Dr. Jacques's report thus makes it clear that E.M.'s disability was not as clearly noticeable in 2004 as it was in 2007.

Yet even if the majority is correct and the 2007 Jacques report made it more likely that E.M. *in fact* had a learning disability in 2004, the issue in this case is not the apodictic truth of E.M.'s condition when the school district first assessed him. Rather, as the majority itself holds, the issue is "whether [the school district's] choice among test scores was reasonable." Maj. Op. at 9586. The reasonableness of the school district's choice of test scores in 2004 could not have been affected by a test administered in 2007 using assessment tools which were unknown in 2004. Thus, in light of our previous admonitions that a school district's actions cannot be judged

in "hindsight," the district court was well within its discretion when it declined to consider the Jacques report.[2]

I am therefore puzzled by the majority's conclusion that the district court did not weigh the Jacques report's relevance, and the majority's decision to remand to the district court so the district court may determine such relevance anew. The district court's order on E.M.'s motion to supplement the record reads:

> E.M. also argues his recent assessment . . . should be admitted because this evidence will shed light on the correctness of the ALJ's determination. *Defendants argue that this evidence is not relevant to the Court's analysis of the diagnosis during the relevant time period.* . . . The Ninth Circuit has held that educational programs *are reviewed not in hindsight but in light of the information available at the time the program was developed. Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1993 ("Actions of the school system cannot . . . be judged exclusively in hindsight."). Because the Court concludes that the after-acquired evidence E.M. seeks to introduce is not necessary to evaluate the ALJ's determination, it will not be admitted.

Emphasis added.

It is clear from this order that the district court *did* weigh the relevance of the Jacques report. The district court credited the defendants' contention that the Jacques report—written

---

[2]It is worth noting that E.M. is not challenging a *continued* failure by the school district to diagnose him for special education in light of the Jacques report. Indeed, only two months after Dr. Jacques completed her assessment, the school district reassessed E.M. and found that he *was* eligible for such services. E.M. seeks monetary compensation based on the school district's alleged error *in its 2004 evaluation.*

three years after the school district's purportedly erroneous diagnosis—was not "*relevant* to the Court's analysis" of that error during the "*relevant* time period." In so doing, the district court cited our decision in *Adams*, which holds that as a matter of law, a school district's actions cannot be judged exclusively in hindsight. In determining that the district court failed to consider the Jacques report's relevance, the majority plucks out of context the district court's determination that the Jacques report was "not necessary to evaluate the ALJ's determination," and remands because it apparently finds fault in this language. But it is clear from the order that the district court so found because the Jacques report is *irrelevant* to the issue whether the school district erred in 2004.[3] I would not remand to the district court—wasting time and resources—so that the district court can again make a determination it has already made.

The majority further holds that the district court erred when it failed to consider whether a purported auditory processing disorder qualified E.M. for special education as a child with an "other health impairment." *See* 20 U.S.C. § 1401(3)(A). But we may not address the question whether E.M.'s auditory processing disorder qualified him for special education as a standalone "other health impairment," because E.M. did not raise this argument before the district court, nor in his opening brief before this court. This court reviews only issues which "are argued specifically and distinctly in a party's opening brief." *Brownfield v. City of Takima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010). Here—contrary to the majority's misleading contention that E.M. argued this issue in his opening brief, E.M. did not submit his auditory-processing-disorder-as-an-other-health-impairment claim in his opening brief *at all*.[4]

---

[3]Moreover, the phrase "necessary to evaluate" is synonymous with "relevant." Evidence is relevant if it "moves the needle" towards one determination or another; if it "moves the needle," it must be evaluated. It follows that, if irrelevant, it need not be evaluated.

[4]The majority further notes that "[B]oth parties addressed the issue at oral argument." Maj. Op. at 9591. This is true, but only because E.M.'s

Thus, as an initial matter, I would not reach the question whether the district court failed to consider E.M.'s other health impairment claim.

Yet even were we to disregard Ninth Circuit precedent and consider such a claim, E.M. also did not raise an auditory-processing-disorder-as-an-other-health-impairment claim in the *district* court. The majority misleadingly contends that because 1) E.M.'s complaint to the district court alleged that "testimonial and documentary evidence established a strong basis for suspecting that E.M. can qualify for special education under other [than specific learning disability] eligibility categories," and 2) there was evidence that Dr. Kaspar diagnosed E.M. with an auditory processing disorder, the district court should have pieced these two fragments together to create an auditory-processing-disorder-as-an-other-health-impairment claim on E.M.'s behalf. But throughout this litigation, E.M. contended that Dr. Kaspar's diagnosis was relevant *only* for his specific learning disability claim.[5] E.M. never contended before the district court—nor before this court—that Dr. Kaspar's diagnosis should have qualified him for spe-

counsel raised the issue for the *first time* at oral argument, and devoted the bulk of her oral argument to this claim. Indeed, during oral argument, counsel for the school district noted that she would address the arguments raised by E.M.'s counsel at opening argument, but further noted that this was one of many "issues . . . which we consider new." I am aware of no authority which holds that a waived issue somehow ceases to be waived if an attorney ambushes a party-opponent by raising the issue for the first time at oral argument, and the party-opponent is thus forced to respond.

[5]A specific learning disability requires that 1) a child has a "severe statistical discrepancy" between "ability" and "achievement" test scores, and 2) that discrepancy be caused by a disorder in a "basic psychological process." *See* 20 U.S.C. § 1401(30); Cal. Educ. Code § 56337. A child has an other health impairment when he has "limited strength, vitality, or alertness . . . [that] is due to chronic or acute health problems." 20 U.S.C. § 1401(30); 34 C.F.R. § 300.8(c)(9). Throughout this litigation, E.M. has contended that his alleged auditory processing disorder qualifies as a "disorder in a basic psychological process" for the purposes of a specific learning disability.

cial education as an other health impairment. Nor was the district court required to piece together vague and isolated phrases from E.M.'s complaint to create an auditory-processing-disorder-as-an-other-health-impairment claim on E.M.'s behalf. "Judges are not like pigs, hunting for truffles buried in briefs." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). I am puzzled as to how this court can reverse the district court for its failure to consider a claim with which it was never presented.

I would affirm the district court's decision in its entirety.