Opinion by Judge NOONAN; Dissent by Judge BEA.
OPINION
NOONAN, Circuit Judge:
E.M. is a bilingual student in Pajaro Valley Unified School District (“PVUSD”), California. He has performed poorly in school, although by most measures, he is of average to above-average intellectual ability. E.M.’s parents brought this action to challenge PVUSD’s determination that E.M. did not qualify for special education under the Individuals with Disabilities Education Act (“IDEA”). The Special Education Division of the California Office of Administrative Hearings (“OAH”) upheld PVUSD’s assessment. The district court, in turn, upheld the OAH’s decision.
This appeal comes to us after careful consideration by an able district judge. We disagree with his assessment only to the extent that we find one claim not addressed and one report not measured for its relevance. We affirm the judgment of the district court in part, reverse in part, and remand for further proceedings.
FACTS
At all relevant times, E.M. was a student in PVUSD. In the third and fourth grades, he struggled in school. His teachers identified attention and homework completion as problem areas. They used interventions designed to help him succeed in a regular educational program. They had limited success. E.M. was designated as “at risk for retention.” However, his teachers did not perceive him as a candidate for special education.
The summer before E.M. entered fifth grade, his parents brought him to a psychologist, Roslyn Wright, to have him evaluated for a learning disability. Dr. Wright assessed E.M. using a test of intellectual ability, the Wechsler Intelligence Scale for Children, Third Edition (“WISC-III”), and a battery of achievement tests, the Wood *1002 cock-Johnson Tests of Achievement-Ill (“WJ-III”). Based on the test results, Dr. Wright diagnosed E.M. with a learning disability.
E.M.’s parents then requested PVUSD to assess their son for eligibility for special education and related services under IDEA. PVUSD’s psychologist administered to E.M. the Kaufman Assessment Battery for Children (“K-ABC”), a comprehensive intelligence test, and the WJ-III achievement tests. Based on this assessment, PVUSD determined that E.M. was not eligible for special education.
At the request of E.M.’s parents, PVUSD reassessed E.M. in May of his fifth-grade year and reached essentially the same result as it did in its first assessment. PVUSD performed a third assessment in June, resulting in recommendations for additional interventions in the general education classroom. At the end of fifth grade, PVUSD again designated E.M. as at risk for retention.
In November 2005, in the first half of E.M.’s sixth-grade year, E.M.’s parents obtained an auditory evaluation by Dr. Ruth Kaspar. She concluded that E.M. had an auditory processing disorder.
PROCEEDINGS
E.M.’s parents disagreed with PVUSD’s assessments and, on December 5, 2005, E.M. filed a complaint with the Special Education Division of the OAH. The OAH held a six-day due process hearing and issued a decision in favor of PVUSD on all issues. E.M. appealed the decision to the district court, where the parties filed cross-motions for summary judgment.
In the district court, E.M. moved to supplement the record with evidence obtained after the conclusion of the OAH hearing. This evidence included a report by Cheryl Jacques, a clinical psychologist, who reviewed E.M.’s records and conducted a battery of tests. Dr. Jacques tested E.M.’s intelligence using the WISC-IV, an updated version of the WISC-III test that Dr. Wright used. Based on her assessment and review of the records relating to E.M., Dr. Jacques concluded that E.M. had a “specific learning disability” as defined under IDEA. See 20 U.S.C. § 1401(30). She also reviewed the data from prior assessments and concluded that it was “puzzling” that PVUSD did not find that E.M. qualified for special education in 2004. The district court denied E.M.’s request to supplement the record with Dr. Jacques’s report.
The district court initially denied PVUSD’s motion for summary judgment and remanded E.M.’s case to the OAH for further written analysis as to some of the prior conclusions of the administrative law judge (“ALJ”). In the meantime, PVUSD re-assessed E.M. and, on February 22, 2008, found him eligible for special education as of that date. PVUSD did not admit that it had previously failed to locate, evaluate, and identify E.M. as a student with a disability.
The OAH returned E.M.’s case to the district court, where E.M. argued that he was entitled to compensatory educational services, among other forms of relief, based on PVUSD’s failure to meet its obligations to him under IDEA prior to its February 22, 2008 reassessment. The district court found that the ALJ’s amended opinion provided a sufficient basis for deciding the parties’ cross-motions for summary judgment. It granted PVUSD’s motion.
This appeal followed.
ANALYSIS
We have jurisdiction to review the district court’s grant of summary judgment under 28 U.S.C. § 1291. We review de novo an award of summary judgment. Parents of Student W. v. Puyallup Sch. *1003 Dist., 31 F.3d 1489, 1494 (9th Cir.1994). Evidentiary rulings are reviewed for abuse of discretion. United States v. Higuera-Llamos, 574 F.3d 1206, 1209 (9th Cir.2009).
E.M. claims that the district court erred in concluding that PVUSD met its affirmative obligation to locate, evaluate, and identify him as a student with a disability (its “child find” obligation). See 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111(a)(l)(ii); Cal. Educ.Code §§ 56300, 56301. In particular, E.M. argues that PVUSD did not properly evaluate him and identify him as a student eligible for special education and related services based on his specific learning disability and on his “other health impairments” of Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder (“ADD/ADHD”) and auditory processing disorder. See 20 U.S.C. § 1401(3)(A)(i); 20 U.S.C. § 1401(30). E.M. claims entitlement to additional educational services to compensate him for PVUSD’s failure to meet its obligations to him under IDEA. See Puyallup, 31 F.3d at 1496.
I.
We first address E.M.’s eligibility for special education as a child with a specific learning disability. Under California law in effect during the relevant period, a child is found to have a specific learning disability when it is determined that (1) a “severe discrepancy” exists between the child’s intellectual ability and achievement in one or more of seven designated academic areas; (2) “[t]he discrepancy is due to a disorder in one or more of the basic psychological processes and is not the result of environmental, cultural, or economic disadvantages”; and (3) “[t]he discrepancy cannot be corrected through other regular or categorical services offered within the regular instructional program.” Cal. Educ.Code § 56337 (2005). The parties dispute whether E.M. met the first and second criteria.
E.M. argues that the district court improperly concluded that he failed to establish that he suffered from a “disorder in a basic psychological process.” We agree. The only person who formally assessed E.M. for an auditory processing disorder was Dr. Ruth Kaspar. Dr. Kaspar, an audiologist, diagnosed E.M. with an auditory processing disorder. The school district hired Dr. Jody Winzelberg, also an audiologist, as an expert witness. Based on a review of Dr. Kaspar’s report, Dr. Winzelberg testified that she would characterize E.M.’s test results as showing “some weakness in the auditory system,” and that she could not rule out an auditory processing disorder diagnosis.
E.M. also argues that the district court erred in concluding that he failed to show that there was a “severe discrepancy” between his intellectual ability and achievement scores. In determining whether a severe discrepancy existed, PVUSD used E.M.’s performance score of 104 on the WISC-III test administered by Dr. Wright rather than E.M.’s mental processing composite score of 111 on the K-ABC test that PVUSD itself administered. PVUSD does not dispute that had it used the K-ABC score, it would have found a severe discrepancy. Instead, PVUSD argues that it made a reasonable determination that E.M. did not show a severe discrepancy based on all available material on E.M. E.M. contends that PVUSD impermissibly considered the fact that he is bilingual and “cherry picked” among his test scores to reach a predetermined result.
This court has held that school districts have discretion in selecting the diagnostic tests they use to determine special education eligibility. See Ford v. Long Beach Unified Sch. Dist., 291 F.3d 1086, *1004 1088-89 (9th Cir.2002) (holding that a school district need not use any traditional IQ test to assess for specific learning disability). E.M.’s case presents a related, but different, question: does IDEA permit a school district to exclude the valid results of a test the district itself selected and administered? This question touches on a fundamental tension in special education law — that between ensuring that all disabled children have access to educational opportunity and ensuring that non-disabled children are not improperly identified as disabled. This tension is particularly salient for minority students, who historically have been over-identified as disabled and disproportionally placed in segregated educational settings, due in part to biased IQ tests. See, e.g., Larry P. by Lucille P. v. Riles, 793 F.2d 969 (9th Cir.1984); Diana v. Cal. Bd. of Educ., No. C-70-37 RFP (N.D.Cal.1970, 1973) (resolved through a stipulated settlement). IDEA mandates that states implement safeguards aimed at ensuring that testing procedures are not racially or culturally discriminatory, and that “no single procedure shall be the sole criterion for determining an appropriate educational program for a child.” 20 U.S.C. § 1412(a)(6)(B). In line with this requirement, California Code of Regulations, title 5, § 3030(j) mandates that school districts consider “all relevant material which is available on the pupil” and not use any “single score or product of scores, test or procedure” in determining eligibility based on a specific learning disability. Where a comparison of IQ scores and achievement scores yields an ambiguous result, the application of a blanket rule barring a school district from considering other factors in determining whether a child has a specific learning disability would upset the balance IDEA attempts to achieve. Accordingly, we hold that a school district, considering all relevant material available on a pupil, must make a reasonable choice between valid but conflicting test results in determining whether a “severe discrepancy” exists. See Cal. Code Regs., tit. 5, § 3030(j).
Before determining whether PVUSD’s choice among test scores was reasonable, it is necessary to address the parties’ dispute over whether the district court properly excluded the assessment of E.M. conducted by Dr. Jacques. IDEA mandates that, on review of an administrative decision, the district court “shall hear additional evidence at the request of a party.” 20 U.S.C. § 1415(i)(2)(C)(ii). But not all evidence is “additional evidence.” In Ojai Unified Sch. Dish v. Jackson, we held that a district court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing, nor should it admit evidence that changes “ ‘the character of the hearing from one of review to a trial de novo.’ ” 4 F.3d 1467, 1473 (9th Cir.1993), cert. denied, 513 U.S. 825, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994) (quoting Town of Burlington v. Dep’t of Educ., 736 F.2d 773, 791 (1st Cir.1984), aff'd sub nom. Sch. Comm, v. Dep’t of Educ., 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)). Adopting the First Circuit’s rule in Town of Burlington, we held that “additional evidence” includes, inter alia, “evidence concerning relevant events occurring subsequent to the administrative hearing.” Ojai, 4 F.3d at 1473. Applying this rule, we determined that the district court properly admitted evidence related to an alternative educational placement for a disabled child. Id. The placement first became available after the child’s administrative hearing. Id. Similarly, in Adams v. Oregon, we observed that after-acquired evidence “may shed light” on the objective reasonableness of a school district’s actions at the time the school district rendered its decision. 195 F.3d 1141, 1149 (9th Cir.1999). In sum *1005 mary, under our precedent, evidence that is non-cumulative, relevant, and otherwise admissible constitutes “additional evidence” that the district court “shall” consider pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii).
IDEA’S requirement that courts consider additional evidence is grounded in the somewhat unusual nature of judicial review under the Act. In Ojai, we observed that “judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review.” 4 F.3d at 1471. Under IDEA, “the federal court has a continuing obligation to ensure that the state standards themselves and as applied are not below the federal mínimums.... [which] persists despite any state administrative rulings on federal law or state recodifications of federal law.” Town of Burlington, 736 F.2d at 792. The requirement that federal courts consider additional evidence when evaluating state administrative rulings implements the intent that federal courts enforce the minimum federal standards IDEA sets out.
It is argued that our reading of 20 U.S.C. § 1415(i)(2)(C)(ii) conflicts with the Fourth Circuit’s holding in Schaffer v. Weast, 554 F.3d 470, 476 (4th Cir.2009). But in Schaffer, the contention that the district court violated IDEA’S mandate that it hear additional evidence failed for the “straightforward reason” that the district court in fact had admitted the evidence. Id. at 475. It simply concluded that the evidence should not “determine the merits of the case.” Id. Here, the district court did not admit Dr. Jacques’s report and did not consider it in deciding the merits of E.M.’s case.
It is also argued that our opinion is inconsistent with the Eighth Circuit’s holding in West Platte R-II School District v. Wilson, 439 F.3d 782 (8th Cir.2006). In West Platte, the court upheld the district court’s exclusion of evidence of a child’s progress subsequent to the administrative hearing because the proponent of the evidence — the school district — failed to “provide a solid justification for supplementing the record.” Id. at 785. The court in West Platte did not cite 20 U.S.C. § 1415(i)(2)(C)(ii), and the court appears not to have accounted for the unusual nature of judicial review in IDEA cases. See Ojai 4 F.3d at 1471. Moreover, West Platte’s unelaborated requirement that the school district offer a “solid justification” for the admission of after-acquired evidence does not appear to conflict with our reading of 20 U.S.C. § 1415(i)(2)(C)(ii). The determinations of a state agency are entitled to greater deference where, as in West Platte, the agency finds that one of its school systems has not complied with the state’s implementation of the IDEA. See Town of Burlington, 736 F.2d at 792.
Our reading of 20 U.S.C. § 1415(i)(2)(C)(ii) finds support in Susan N. v. Wilson School District, 70 F.3d 751, 760 (3d Cir.1995), in which the Third Circuit ruled that a district court “must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress’ goal has been reached for the child involved.” The court concluded that the district court lacked discretion to summarily exclude evidence that was not available at the time of the administrative hearing and was relevant to the district court’s assessment of the reasonableness of the school district’s decision at the time the decision was made. Id. at 758.
Similarly, in Totvn of Burlington, the First Circuit declined to adopt a rule disallowing testimony by “all who did, or could have, testified [at] the administrative hearing.” 736 F.2d at 790. The court *1006 commented on the particular usefulness of expert testimony to the district court in “illuminating the nature of the controversy” and “bringing the court up to date on the child’s progress from the time of the hearing to the trial.” Id. at 791.
We hold that the district court applied an incorrect standard for admission of after-acquired evidence in excluding Dr. Jacques’s report. The district court excluded Dr. Jacques’s report as not “necessary to evaluate the ALJ’s determination.” The proper inquiry was whether the report was relevant, non-cumulative, and otherwise admissible.
Dr. Jacques’s report shows that E.M. had a legally significant discrepancy between ability and achievement in 2007. This showing may make it more likely that a legally significant discrepancy was present in 2004. Moreover, Dr. Jacques observed that PVUSD would have found that a severe discrepancy existed in 2004 had it used either the K-ABC non-verbal score of 113 or the K-ABC mental processing composite score of 111. Her report concluded that “it is puzzling that the district did not find [E.M.] eligible for special education in 2004.”
It is true that we have said that “actions of the school systems ... cannot be judged exclusively in hindsight.” Adams, 195 F.3d at 1149-50(quoting Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1041 (3d Cir.1993)). But that exclusive use of hindsight is forbidden does not preclude consideration of subsequent events. Id. The clear implication of permitting some hindsight is that additional data, discovered late in the evaluation process, may provide significant insight into the child’s condition, and the reasonableness of the school district’s action, at the earlier date.
It might be thought that the more exacting test, developed in 2007, is not relevant to 2004: the 2007 test could not have been used in 2004. The school district cannot be faulted for failing to use a test that was not available in 2004. The intent of 20 U.S.C. § 1415(i)(2)(C)(ii), however, is that the school district’s 2004 actions be reviewed with the help available in 2007.
On remand, the district court should consider whether Dr. Jacques’s report is relevant to the determination whether PVUSD met its obligations to E.M. under the IDEA and is otherwise admissible.
E.M. also argues that the district court should have considered PVUSD’s 2008 assessment finding him eligible for special education and related services on the basis of his specific learning disability. IDEA provides that the district court “shall receive the records of the administrative proceedings.” 20 U.S.C. § 1415(i)(2)(C)(i). E.M. asserts that the 2008 assessment was submitted to the OAH after the district court remanded his case. PVUSD does not dispute this assertion. It is unclear to us why the assessment does not appear in the district court’s record. The district court should consider the assessment on remand. See M.L. v. Fed. Way Sch. Dist., 394 F.3d 634, 641 n. 8 (9th Cir.2005).
II.
E.M. asserts that the district court should have considered whether his auditory processing disorder diagnosis qualified him for special education as a child with an “other health impairment ].” See 20 U.S.C. § 1401(3)(A)(i). It is argued that E.M. failed to raise this claim. The argument overlooks the record. In E.M.’s complaint to the OAH, he requested “[t]o be found eligible for special education and related services under the IDEA ... as a child having an other health impairment due to his auditory processing deficits.” E.M.’s complaint to the district court alleged that “testimonial and documentary evidence established a strong basis for suspecting that E.M. can qualify for special education un *1007 der other [than specific learning disability] eligibility categories.” This evidence included Dr. Kaspar’s evaluation diagnosing E.M. with an auditory processing disorder. The OAH apparently ignored E.M.’s other health impairment claim and the district court did not consider it. In a brief E.M. submitted to the district court after the OAH amended its first decision, E.M. asserted that the OAH erred in concluding that PVUSD properly assessed him in “the suspected area of disability of auditory processing.” In his opening brief to this court, E.M. argued that he qualified for special education based on his auditory processing disorder. In short, E.M. had asserted his auditory processing disorder claim no less than four times — to the OAH; twice to the district court; and in his opening brief to us. Both parties addressed the issue at oral argument. See United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992). E.M. did not waive his other health impairment claim.
The regulations define “other health impairment” as “having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment.” 34 C.F.R. § 300.8(c)(9). The impairment must be attributable to “chronic or acute health problems” and must have an adverse effect on the child’s educational performance. Id. The regulations contain a non-exhaustive list of chronic and acute health problems, which does not include auditory processing disorder. See id. On remand, the district court should address whether an auditory processing disorder may qualify as an other health impairment, and if so whether PVUSD met its obligation to assess E.M. and identify him as a child with an other health impairment.
III.
E.M. contends that the district court erred in holding that the ALJ properly struck E.M.’s allegations that PVUSD failed to assess him for ADD/ADHD. The party requesting a due process hearing before the ALJ in an IDEA case may not raise issues at the hearing that were not included in its complaint unless the other party consents. Cal. Educ.Code § 56502® (2005). The district court correctly concluded that E.M. did not include an ADD/ ADHD claim in his complaint to the ALJ. Accordingly, the district court did not err in upholding the ALJ’s decision to strike E.M.’s ADD/ADHD allegations.
CONCLUSION
For the reasons stated, the district court’s decision is AFFIRMED with respect to E.M.’s claim that he qualified for special education and related services as a child with ADD/ADHD and REVERSED and REMANDED for a determination whether, during all relevant times, PVUSD met its affirmative obligation to locate, evaluate, and identify E.M. as a child with an other health impairment or a specific learning disability related to his auditory processing disorder.
Each party shall bear its own costs on appeal.